Filed 7/31/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TINA BAUGHMAN, | |
| Plaintiff and Appellant, | G046470 |
| v. | (Super. Ct. No. 07CC08601) |
| WALT DISNEY WORLD CO., | ORDER MODIFYING OPINION; [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

The opinion filed in this case on July 18, 2013, is ORDERED modified as follows:

1. On page 9, in the first full paragraph, delete the following sentence: "Where the trial court has granted summary judgment, we consider '"all of the evidence offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)' (*Cordova v. City of Los Angeles* (2012) 212 Cal.App.4th 243, 252.)"

2. On page 9, in place of the deleted language, insert the following sentence: "Where the trial court has granted summary judgment, we consider 'all of the

evidence offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]' (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)"

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

Filed 7/18/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TINA BAUGHMAN, | |
| Plaintiff and Appellant, | G046470 |
| v. | (Super. Ct. No. 07CC08601) |
| WALT DISNEY WORLD CO., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Andrew P. Banks, Judge. Affirmed.

David Geffen Law Firm and David G. Geffen for Plaintiff and Appellant.

Payne & Fears, Daniel F. Fears, Daniel L. Rasmussen and Daniel F. Lula for Defendant and Respondent.

\*          \*          \*

In 2007, plaintiff Tina Baughman brought suit against Walt Disney World Co. (Disney) alleging negligence per se, and violations of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq., (ADA)), California's Disabled Persons Act (Civ. Code, § 54 et seq., (DPA)), and the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), based on Disney's refusal to allow her to use a Segway[1] at Disneyland, a place she has never been. Baughman alleged the Segway is her preferred method of transportation, given that her muscular dystrophy substantially limits her ability to walk. The ADA cause of action was subsequently removed to the federal district court.[2]

The trial court below granted Disney's motion for summary judgment and entered judgment in Disney's favor. We find Disney established it is entitled to judgment as a matter of law in that it demonstrated a Segway is an unstable two-wheeled device that could accelerate quickly, either forward or backward, and injure the rider and/or others if the rider is bumped. The undisputed expert evidence showed Segways cannot be used safely in Disneyland crowds due to its method of operation. In all of the papers submitted, there is no evidence showing the Segway can be safely used at Disneyland except Baughman's inconsequential declaration that she has never had an accident while

---

[1] A Segway is a gyroscopically stabilized two-wheeled battery-powered personal transportation device upon which the individual stands.

[2] Prior to the trial court's ruling in the instant case, the federal district court granted Disney summary judgment on the ADA claim. After the ruling in the instant case, the Ninth Circuit Court of Appeals reversed and remanded the ADA matter to the district court for Disney to prove, if it could, that Segways cannot be used safely within the park. (*Baughman v. Walt Disney World Co.* (9th Cir. 2012) 685 F.3d 1131, 1137.) Upon remand, the district court stayed further proceedings in that matter pending resolution of *Ault v. Walt Disney World Co.*, 07-CV-1785, an ADA class action against Disney based on its policy prohibiting the use of two-wheeled vehicles, including Segways, within its parks and hotels. (See *Ault v. Walt Disney World* Co. (11th Cir. 2012) 692 F.3d 1212, 1215 [upheld district court's approval of the class action settlement including a "nationwide waiver of declaratory or injunctive claims relating to Disney's policy" prohibiting the use of Segways], cert. den. (2013) _U.S._ [133 S.Ct. 1806].)

using her Segway.  There was no evidence that Disney's procedures amounted to a lack of a reasonable accommodation.  Accordingly, no triable issue of fact remains.

Because this issue is dispositive, we need not address other issues raised by the parties, including whether Baughman should be judicially estopped from claiming she cannot use a motorized scooter or wheelchair, given the fact she has brought three prior ADA lawsuits in which she alleged she uses a wheelchair or motorized scooter, or whether she has standing to bring an action for damages under the Unruh Civil Rights Act or the DPA.  (*Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414, 416 ["a person must tender the purchase price for a business's services or products in order to have standing to sue it for alleged discriminatory practices" under the Unruh Civil Rights Act]; *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1224 [DPA requires disabled person to have paid admission fee and then be denied entry].)  We affirm.

I

FACTS

A.  *Prior Lawsuits by Baughman*

In 2005, Baughman filed a complaint against Sav-On Drug Store alleging negligence per se and violations of the ADA, the DPA, the Unruh Civil Rights Act, and Health and Safety Code section 19955, et seq.  The lawsuit concerned access to Sav-On Drug Store's restroom.

In 2006, Baughman filed a lawsuit against the Department of Motor Vehicles on much the same grounds.  This lawsuit also involved the use of a restroom.  The case settled when the Department of Motor Vehicles agreed to bring their restrooms into compliance and paid Baughman $4,000 in damages.

In 2006, Baughman brought the same type of lawsuit against Santa Monica Ford.  This lawsuit also settled when Santa Monica Ford agreed to bring its restrooms into compliance and paid Baughman $4,000 in damages.

3

Baughman's attorney in the present matter represented her on each of the other complaints and signed each of the complaints. The sixth paragraph of each of the other complaints alleged Baughman "has a physical impairment which causes her to rely on a power scooter or wheelchair for her mobility." An attorney who worked in the office of Baughman's attorney drafted the complaints in the Sav-On Drug Store and Santa Monica Ford lawsuits. His declaration states he incorrectly alleged Baughman relied on a wheelchair or a scooter. Baughman's present attorney declared he was unaware the pleadings alleged Baughman used a wheelchair or a scooter, and that he has never known Baughman to use one of those devices.

B. *Action Against Disney*

In April 2006, Baughman telephoned Disneyland. She explained that she wanted to take her daughter to Disneyland for her daughter's eighth birthday, and requested that she be admitted to the park on her Segway, which she uses to get around because she is disabled. She has limb-girdle muscular dystrophy. Her disability causes a gradual weakening of the large muscles in her legs and arms. She uses a cane when she walks short distances. Otherwise, she uses a Segway, a device that permits her to stand while she moves about. She was informed Disney's policy bars Segways from the park. In May 2006, Baughman wrote to Disney, explaining her situation and again requested she be permitted to use her Segway at Disneyland. She wrote a second letter to Disney on June 14, 2006. She eventually spoke with a representative of Disney who informed her Disney has a long-standing policy of prohibiting the use of two-wheeled vehicles in its public areas. This conversation was documented in a June 20, 2006 letter from Disney to Baughman. Baughman has never visited Disneyland, although she visited Disney World in Florida one time as a child. In August 2007, Baughman brought her lawsuit against Disney in the Orange County Superior Court, alleging violations of the ADA,

4

California's Unruh Civil Rights Act, the DPA, and that Disney was negligent per se.

The month after Baughman filed her suit against Disney, Disney removed the ADA cause of action to the United States District Court for the Central District of California. Disney filed a motion for summary judgment on the remaining causes of action in the Orange County Superior Court. In support of its motion, Disney submitted the declaration and deposition testimony of Gregory Hale, Disney's chief safety officer. Hale, who has a bachelor of science degree in electrical engineering and is a licensed professional engineer, is responsible for "safety, accessibility for guests with disabilities and technology advances in these areas for [Disney] theme parks, including Disneyland Park." He stated Disneyland is accessible to guests with disabilities, including those using wheelchairs or motorized scooters. He said most attractions have queues configured to accommodate motorized scooters and wheelchairs, and described the specific accommodations made in connection with various attractions. He added that while Disney has made these accommodations, for safety reasons Disney has a policy prohibiting all two-wheeled vehicles, including Segways, at Disneyland.

Hale, Disney's foremost authority on Segways, is "very familiar" with the device. He is a personal friend of the inventor and studied and rode prototypes prior to the device being made available to the public. He has ridden a Segway "many times." He described the Segway as "a battery-powered, self-balancing, two-wheeled device with multiple gyroscopes, and acceleration sensors, all controlled by on-board computers. It has very powerful twin motors that can generate thousands of watts of power in an instant. The Segway has no steering wheel, brakes or acceleration pedal. Its rider stands upright on a platform that is about eight inches off the ground. The Segway responds to the rider's movements to keep itself balanced. If the rider leans forward, it will go forward, and if the rider leans back, it will run backward. The Segway must be free to

move very rapidly forward or backwards to maintain balance. The Segway's top speed is approximately 12.5 miles per hour."

Disney decided the unsupervised and unrestricted use of Segways in Disneyland is inherently unsafe and poses an unacceptable risk of injury to guests, including the user, for a number of reasons. The policy is not related to disabilities. It is related to safety, Disney's "number one priority." The Segway is an inherently unstable device that constantly responds "to input, in the form of movements by its rider and active stabilization systems, to move and remain upright. In the event of a sudden or unexpected input, be it a sharp movement by the rider or an obstacle such as a curb, the Segway can tip over rapidly. In addition, if any part of the onboard computer fails, the Segway will not work properly and may, again, tip over or move unexpectedly." Hale stated, "It is difficult for a Segway rider to keep the device perfectly still, as would be required in a crowded theme park surrounded by other guests, because the Segway must be free to move in order to maintain its upright status when the rider even slightly shifts their weight." He analogized the Segway to a unicycle. "Just as it is virtually impossible for a unicycle rider to stop moving and remain still—because the unicycle requires movement to operate—the Segway is constantly moving to find the center of gravity created by the rider's weight and directional learning. Even seemingly 'stopped' Segways are in reality moving, and a small movement by a rider on an apparently 'stopped' Segway can cause it to begin moving forward or backward rapidly, even if it is accidental." He further pointed out that "[s]hort of turning off the Segway entirely, there is no way to ensure that it remains unmoving and stable when a rider is on it. Unlike a wheelchair or power scooter, which is inherently stable due to its three or four wheels, wide wheelbase, low center of gravity, steering controls and brakes, the Segway has none of these features. Even in the hands of experienced rider (which [Disney] would have no way of assessing on a person by person basis), a small misstep or wrong move or

malfunction would cause the Segway to lose control, speed forward or backward or tip over, injuring its rider or other persons." Disney also submitted evidence that in 2010, the owner of the company that makes Segways, died when he apparently lost control of his Segway.

Baughman's opposition contained her own declaration. In it she set forth the nature of her disability and represented that she has never used a wheelchair. She said she bought a Segway in 2002 and has used it for over 600 hours without an accident. She stated that she wanted to use her Segway at Disneyland because she has difficulty rising from a seated position, her daughter cannot assist her in getting out of a wheelchair or scooter, and use of the Segway would help her supervise her children and enjoy her time at Disneyland.

The opposition also contained portions of Hale's deposition taken in another proceeding. Purportedly, the purpose of attaching those portions of Hale's deposition was to attack his expertise. Baughman submitted no expert declaration to support the inference she asked the court to draw—that Hale lacked expertise in connection with Segways.

Baughman attempts to make much of the fact that in Hale's deposition in that other matter he states Disney is the largest purchaser of Segways, that Segways are used by Disney employees on the back lots, and that Segways have been used for demonstrations at Disneyland and for tours. The Segways Hale talked about are used on the back lots where the public were not present, or on tours preceding the opening of California Adventure.

The court found Disney met its initial burden and that the burden then shifted to Baughman. The court concluded Baughman did not meet her burden and granted Disney's motion for summary judgment.

7

## II

## DISCUSSION

Baughman's lawsuit is based on the fact that Disney, while it permits wheelchairs and motorized scooters in Disneyland, does not permit the use of two-wheeled vehicles, and she alleged she needs to use a two-wheeled vehicle, a Segway, in order to fully enjoy Disneyland. Disney on the other hand, asserts that two-wheeled vehicles are unstable and not safe for use inside Disneyland.

The purpose of summary judgment is to provide courts a procedural tool to eliminate those "cases in which there is no ascertainable issue of fact to be tried. [Citations.]" (*Barnes v. State Bd. of Equalization* (1981) 118 Cal.App.3d 994, 1001.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) A cause of action is meritless if "[o]ne or more of the elements of the cause of action cannot be separately established" (Code Civ. Proc., § 437c, subd. (*o*)(1)), or the defendant has established an affirmative defense to the plaintiff's causes of action (Code of Civ. Proc., § 437c, subd. (*o*) (2)).

"A defendant moving for summary judgment has the burden of presenting facts to negate an essential element of each cause of action or to show there is a complete defense to each cause of action. [Citation.]" (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304.) If the defendant meets this showing, the burden then shifts to the plaintiff to present specific facts establishing a triable issue exists as to one or more material facts. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; Code of Civ. Proc., 437c, subd. (p)(2).) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*

8

*v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 845.)  If the plaintiff then fails to meet her burden, the defendant is entitled to summary judgment.  (Code Civ. Proc., § 437c, subd. (c).)

We review de novo a trial court's ruling on a summary judgment motion. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.)  Where the trial court has granted summary judgment, we consider "'"all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.'  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)"  (*Cordova v. City of Los Angeles* (2012) 212 Cal.App.4th 243, 252.)  In other words, we apply the same rules and standards governing a trial court's decision in ruling on the motion.  In so doing, should we find the trial court's ultimate decision was correct, we affirm even if we find the trial court's rationale was incorrect.  In other words, "[t]he sole question properly before us on review of the summary judgment is whether the judge reached the *right* result . . . whatever path he might have taken to get there, and we decide that question independently of the trial court.  [Citation.]"  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694, fn. omitted.)

The Unruh Civil Rights Act provides:  "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  (Civ. Code, § 51, subd. (b).)  Section 52 of the Civil Code is the "enforcement mechanism" of the Unruh Civil Rights Act.  (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1153.)

9

Civil Code section 51, subdivision (f) states: "A violation of the right of any individual under the federal [ADA] shall also constitute a violation of this section." The ADA provides in pertinent part: "No individual shall be discriminated against on the basis in the full and equal enjoyment of the goods, services, facilities, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." (42 U.S.C. § 12182(a).) The ADA defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." (42 U.S.C. § 12182(b)(2)(A)(ii).)

"Like the Unruh Civil Rights Act, the DPA incorporates the ADA to the extent that 'A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section.' (Civ. Code, § 54, subd. (c).)" (*Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401, 1413.)

Baugman's negligence per se cause of action relies on Evidence Code section 669, subdivision (a)(1) which creates a rebuttable presumption when one acts negligently if he or she "violated a statute, ordinance, or regulation of a public entity." Just as her Unruh Civil Rights and DPA causes of action rely on a violation of the ADA, so too does her action for negligence per se.

Disney produced expert evidence to the effect that Segways poses a substantial risk of injury in the crowded confines inside the park due to the vehicle's design. Baughman did not counter this evidence with expert evidence of her own. (*Ochoa v. Pacific Gas & Electric Co*. (1988) 61 Cal.App.4th 1480, 1485-1486 [summary

10

judgment granted where expert evidence not rebutted by other expert evidence].) Instead, she offered her own declaration to the effect that she has never had an accident on her Segway.

With regard to Baughman's evidence that Disney is one of the largest purchasers of Segways in the world and Disney has used Segways on tours, the issue is whether Segways can be used safely by guests inside the park. The public is not present on Disney's back lots where Segways may be used by its employees. More telling is the fact that Disney's "back-stage" Segway users "cannot go on stage at all while guests are in the parks," and even when Disney gave Segway tours in the past, the tours were limited to a predesignated route in California Adventure Park, adjacent to Disneyland, involved "constant supervision" in "a roped off area away from other guests," and were conducted in the early morning hours *before the park opened* to the general public. This evidence did not undermine the expert evidence presented by Disney. Additionally, Baughman's evidence does not show Disney failed to make reasonable modifications in its policies, practice, or procedures, or that the modification she requested was necessary to afford goods, services, privileges, advantages, or accommodations to individuals with disabilities.[3]

In *Baughman v. Walt Disney World Co.*, *supra*, 685 F.3d at page 1135, the Ninth Circuit Court of Appeals held: "Facilities are not required to make any and all possible accommodations that would provide full and equal access to disabled patrons; they need only make accommodations that are reasonable. In deciding what's reasonable, facilities may consider the costs of such accommodations, disruption of their

_____

[3] Baughman argues without authority that Disney did not make a reasonable accommodation in light of the fact that *she* can operate a Segway safely. Regardless, 28 Code of Federal Regulations section 36.301(b)'s requirement that safety requirements should be made on "actual risks" and not on "mere speculation, stereotypes, or generalizations about individuals with disabilities," appears to refer to the actual risk presented by the device itself and not its operator.

11

business *and safety*."  (Italics added.)  In the present case, Disney's evidence demonstrated that given the crowds at Disneyland and the intrinsic characteristics of Segways, the device poses a danger to the guests of the park, including the operator of a Segway.

We conclude Baughman failed to create a triable issue of material fact with regard to whether Disney failed to make a reasonable accommodation.  The superior court did not err in granting Disney summary judgment.

### III

### DISPOSITION

The judgment is affirmed.  Disney is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.