Filed 11/20/18 Certified for Publication 12/11/18

## TO BE PUBLISHED IN THE OFFICIAL REPORTS

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO
APPELLATE DIVISION

| | |
|---|---|
| CHRISTOPHER MARTINEZ,<br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PIZZA KITCHEN, INC.,<br>    Defendant and Respondent. | Case No:  ACIAS 1800020<br>(Trial Court:  CIVDS1724404)<br><br>P E R  C U R I A M<br>O P I N I O N |

Appeal from judgment of dismissal following order sustaining demurrer to complaint, San Bernardino County Superior Court, San Bernardino District, Michael M. Dest, Judge. Affirmed.

Law Offices of Morse Mehrban, A.P.C; Morse Mehrban for plaintiff and appellant.

Baraban & Teske; James S. Link for defendant and respondent.

THE COURT.* —

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and appellant Christopher Martinez (Martinez) appeals from a judgment of dismissal which was entered after the trial court sustained, without leave to amend, a demurrer filed by defendant and respondent California Pizza Kitchen, Inc. (CPK). In light of the procedural posture of the case, we assume the truth of the facts properly plead by Martinez, but not contentions, deductions, or conclusions of fact or law. (*Evans v. City of*

---

* Cabrera, P. J., Poncin, J., and Cortez, J.

*Berkley* (2006) 38 Cal.4th 1, 5.) We likewise accept as true all facts that may be implied or inferred from the complaint's express allegations. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.) We also consider and take judicial notice of "any matter of which the court of original jurisdiction may properly take notice." (*Varcoe v. Lee* (1919) 180 Cal. 338, 342.)

As relevant to our review, Martinez contends that he suffers from "partial hearing loss" and has difficulty "differentiating desirable sounds without an assistive listening device." In September 2017, Martinez patronized the restaurant and bar operated by CPK. However, because of the disability Martinez was unable to enjoy the music that was playing over the speaker system; music which Martinez contends was part of the "services, facilities, privileges, advantages, and accommodations provided by [CPK]" for "the benefit, entertainment, use, and enjoyment of patrons." Martinez further alleges that he was "excluded, denied services, segregated, and otherwise treated differently" because CPK "failed and refused to provide … an auxiliary aid or service" despite his express request. Based on these facts, Martinez asserted one cause of action for violation of the Unruh Civil Rights Act (the Act) and that claim was premised upon CPK's alleged violation of the Americans with Disabilities Act (the ADA). [1]

---

[1] Clerk's Transcript (CT) 2-8

In demurring to the complaint, CPK argued that the federal authority underlying Martinez' claim only requires a place of public accommodation to provide auxiliary aids when necessary to ensure effective communication of information. Thus, according to CPK, Martinez' claim fails since it related to "background music" as opposed to communications between the parties.[2] In ruling on the demurrer, the trial court took judicial notice of legislative committee reports as well as federal rules and regulations related to the ADA and its requirement that places of public accommodation provide auxiliary aids. Ultimately, the trial court agreed with CPK on the merits and sustained the demurrer without leave to amend since Martinez opted to proceed with the allegations as plead.[3] Through the appeal, Martinez contends that the complaint sufficiently alleges a violation of the Act because the allegations fall within the ADA's definition of discrimination.

## DISCUSSION

**The Standard of Review**

The function of a demurrer is to test the sufficiency of the pleading under attack as a matter of law. Guided by the principals we outlined above, we review *de novo* an appeal from a judgment dismissing an action after the sustaining of a demurrer without leave to amend. (*First Aid*

---

[2] CT 11-20
[3] CT 88-89

*Services of San Diego, Inc. v. California Employment Development Dept.* (2005) 133 Cal.App.4th 1470, 1476.) On the other hand, we decide "whether there is a reasonable possibility that the defect can be cured by amendment" under an abuse of discretion standard. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"Under both standards, the plaintiff bears the burden of demonstrating that the trial court erred." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879; but see *City of Stockton v. Superior Court (Civic Partners Stockton, LLC)* (2007) 42 Cal.4th 730, 746-747 ["The issue of leave to amend is always open on appeal, even if not raised by the plaintiff" below].) The judgment must be affirmed "if any of the grounds raised by defendant require the sustaining of the demurrer, whether or not the court specifies all the grounds" upon which the demurrer could have been sustained. (*Marin Association of Public Employees v. Marin County Employees' Retirement Association* (2016) 2 Cal.App.5th 674, 691 (Review Granted, November 22, 2016).)

**The Unruh Civil Rights Act and the Sufficiency of Martinez' Allegations**

Under the Act, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter [their disability or other protected characteristic they] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments

4

of every kind whatsoever." By the Act's express terms, any violation of the ADA is also considered a violation of the Act. (See Civ. Code, §51, subd. (f); *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 672 ["Because the Unruh Act has adopted the full expanse of the ADA, it must follow, that the same standards for liability apply under both Acts"].)

Here, as noted above, Martinez' claim is premised upon the ADA and its prohibition against discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C.A. § 12182, subd. (a).) As a result, to state a valid claim Martinez was required to allege (1) he has a disability; (2) CPK's facility is a place of public accommodation; and (3) he was denied full and equal treatment because of his disability on a particular occasion. (*Ibid.*; *Molski v. M.J. Cable, Inc.* (2007) 481 F.3d 724, 730; *Donald v. Café Royal, Inc.* (1990) 218 Cal.App.3d 168, 183.)

As was the case before the trial court, the parties' current dispute centers on the sufficiency of the allegations related to the latter element. As to this issue, the ADA defines discrimination as "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services,

5

unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." (42 U.S.C.A. § 12182, subd. (b)(2)(A)(iii); *Baughman v. Walt Disney World Co.* (2013) 217 Cal.App.4th 1438, 1446.) Neither party cites to authority expressly addressing whether there is liability under the Act or whether there is a violation of the ADA when a restaurant or bar fails to provide auxiliary aids to a patron who, because of a disability, is unable to enjoy music being played over a speaker system.

Instead, Martinez relies upon *Feldman v. Pro Football, Inc.* (4th Cir. 2011) 419 Fed.Appx. 381) (*Feldman*). In that case, a federal district court determined that the owner of the Washington Redskins football team and the operator of its stadium (FedEx Field) were required to provide auxiliary aids that enable "equal access to the aural information broadcast over the stadium bowl public address system." (Id. at p. 395.) The "aural information" included "music with lyrics, play information, advertisements, referee calls, safety/emergency information, and other announcements." (*Id.* at p. 390) Notably, the district court in *Feldman*, while expressing "no opinion on the ADA requirements for bars and restaurants" nevertheless indicated there was a significant difference between a stadium and a bar or restaurant. (*Feldman v. Pro Football, Inc.* (D. Md. 2008) 579 F.Supp.2d 697, 709, aff'd (4th Cir. 2011) 419 Fed.Appx. 381.)

In any event, on appeal, and in an unpublished opinion, the circuit court in *Feldman* noted that a Department of Justice (DOJ) regulation implementing the ADA provides that "a public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." (*Feldman, supra,* 419 Fed.Appx. at p. 390, citing 28 C.F.R. § 36.303(c).) However, the circuit court further indicated that neither the ADA nor its implementing regulations "impart guidance on the specific content that places of public accommodation must communicate to individuals who are deaf or hard of hearing." (*Feldman, supra,* 419 Fed.Appx. at p. 390.) Instead, "[t]he regulation contemplates that, like the type of auxiliary aid, the content that must be communicated by auxiliary aids is also context-sensitive. What constitutes 'full and equal enjoyment' of a place of public accommodation's goods, services, facilities, and privileges necessarily varies based on what the place provides to visitors and consumers." (*Ibid.*)

Applying the law to the facts before it, the circuit court in *Feldman* agreed with the district court's determination "that in the context of a professional football game at a large stadium like FedEx Field, effective communication requires defendants to provide auxiliary aids beyond assistive listening devices, which are useless to plaintiffs, to convey the: (1) game-related information broadcast over the public address system, including play information and referee calls; (2) emergency and public

address announcements broadcast over the public address system; and (3) the words to music and other entertainment broadcast over the public address system." (*Feldman, supra*, 419 Fed.Appx. at p. 391.) The circuit court reasoned that the plaintiffs "needed access to this aural content to have full and equal access to the goods and services that defendants provide at FedEx Field." (*Ibid.*)

In so holding, the circuit court in *Feldman* first defined the "goods and services" provided by the defendants as an "entertainment experience" and not just a football game. The court then explained how each component of the "aural content" was part of the experience. For instance, the advertisements communicated which entities supported the Redskins, which causes the Redskins supported, and how spectators could become involved. The communications also relayed emergency information which was necessary to the full use and enjoyment of the experience since the disabled are disproportionately affected by emergencies. As for the music, even if it involved nonsensical lyrics it still added to the environment of "collective excitement" that was being provided as part of the experience. The music also related to synchronized entertainment such as the half-time show and cheer performances. (*Feldman*, *supra*, 419 Fed.Appx. at p. 391.)

While unpublished opinions from the court of appeal or superior court appellate division many not be cited or relied upon, unpublished

federal cases "are citable as persuasive, although not precedential, authority." (*Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352.) In this regard, while we are not bound by *Feldman*, the case is nevertheless persuasive authority from a federal court interpreting federal laws and regulations. Additionally, we "defer to the interpretation of a statute by the agencies charged with administering it," such as those regulations referenced in *Feldman*. (*Aluminum Co. of America v. Bonneville Power Admin.* (9th Cir. 1989) 903 F.2d 585, 590.)

Turning to the allegations before us, and consistent with *Feldman*, we first define the "goods, services, facilities, privileges, advantages, or accommodations" being provided by CPK in order to determine whether Martinez was denied "full and equal enjoyment" thereof. Martinez primarily alleges that CPK operates a "restaurant and bar." This is important since, as noted above, the ADA requirements are context-specific. While there may be some overlap, the ADA generally recognizes a distinction between restaurants, bars, and similar "establishments serving food or drink" versus places of "exhibition or entertainment" such as concert halls and stadiums. (See 42 U.S.C. 12181, subd. (7).) To the extent CPK provided food, drink, and the hospitality services normally associated with restaurants, Martinez has failed to state a valid claim since his suit does not relate to the unequal enjoyment of those goods and services.

As for Martinez' assertion that CPK was playing music over the speaker system, there are no specific facts alleged to support the conclusion that the music was part of the overall goods, services, etc., being offered by CPK for the use and enjoyment of its patrons. As noted above, we ignore "contentions, deductions or conclusions of fact or law" in the complaint. (*Adelman v. Associated Intern. Ins. Co., supra,* 90 Cal.App.4th at p. 359.) Unlike the facts in *Feldman*, there is no indication here that the speaker system was playing advertisements, whether demonstrating a unique relationship between CPK and its sponsors or otherwise. In fact, there are no allegations indicating anything was broadcast over the speaker system other than music. Similarly, there is no indication that the music was unique to CPK, was live, was part of a choreographed or promotional event, or was part of the restaurant's cultural theme, if any. Furthermore, there is no allegation that the music was part of an environment of collective excitement, normally seen in the sporting context, as was the case in *Feldman*.

By referencing "aurally delivered" as opposed to "orally delivered" the ADA is meant to include nonverbal sounds, alarms, and computer-generated speech. (56 F.R. §35544.) However, as the implementing regulations suggest, one is denied full and equal enjoyment of goods, services, and the like when, due to a disability and the lack of auxiliary aids, there is an absence of effective communication relating to those

10

goods and services. Absent some additional or unique facts, which Martinez conceded he could not allege, the music on CPK's speaker system was not part of an overall entertainment experience as was the case in *Feldman*. Thus, while the music was auditory, it was not part of that which CPK was required to effectively communicate. While the complaint does not expressly use the term "background music" as CPK seems to suggest it does, under the facts alleged the music lacks any meaningful connection with the goods and services offered by CPK.

Finally, the Circuit Court in *McNeil v. Time Ins. Co.* (5th Cir. 2000) 205 F.3d 179, 187 noted that while "it is literally possible, though strained, to construe 'full and equal enjoyment' to suggest that the disabled must be able to enjoy every good and service offered to the same and identical extent as those who are not disabled ... such a reading is plainly unrealistic, and surely unintended, because it makes an unattainable demand." Overall, the court in *McNeil* concluded that the ADA prohibits a place of public accommodation from denying the disabled "access to the good or service and from interfering with the disableds' full and equal enjoyment of the goods and services offered." (*McNeil v. Time Ins. Co.* (5th Cir. 2000) 205 F.3d 179, 188.) Since Martinez was not denied the food, beverage, or hospitality services offered by CPK and since there are no facts alleged indicating the music was integrated or otherwise

11

connected with the food and services in any meaningful way, the trial court properly sustained the demurrer and entered judgment.

## **DISPOSITION**

The judgment of the trial court is affirmed.


_____
CARLOS M. CABRERA
Presiding Judge of the Appellate Division



_____
LYNN M. PONCIN
Judge of the Appellate Division



_____
RODNEY A. CORTEZ
Judge of the Appellate Division