Filed 2/11/26  Leung v. Chen CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAK YIN LEUNG et al., | |
| Plaintiffs and Appellants, | A172275 |
| v. | (San Bernardino County |
| MEITONG CHEN et al., | Super. Ct. No. CIVDS1611022) |
| Defendants and Respondents. | |

Plaintiff and Appellant Pak Leung filed this action against Respondents Meitong Chen and Shengli Ge for, among other things, intentional interference with contract.  The trial court granted Respondents' motion for summary adjudication as to this cause of action.  We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2012, Chen and her husband, Ge, contacted Jianxin Zhao and his wife, Jie Qiu, both citizens of China, to tell them about a program to obtain legal residency in the United States through investing in a business in the United States.  Chen and Ge recommended Zhao and Qiu contact David Fang, an immigration attorney in California.  Zhao and Qiu entered a retainer agreement with Fang for him to assist them in their efforts to obtain residency through the EB-5 investment immigration program.  Either Chen

1

and Ge, or Fang, recommended Leung to manage Zhao's business investment.[1]

Leung, through his company Star Max Realty Company, entered a "Management Agreement" with Zhao to manage Zhao's investment company Jin Zhuo Lun, Inc. (JZL).[2] Through the terms of the contract, Leung "shall be responsible for the operation and management of [JZL], and to ensure the fulfillment of all standards and requirements of US Citizenship and Immigration Services on the Immigration through Investment Company, and to support the requirements of [Zhao]'s immigration procedures." Zhao "shall" invest $1,000,000 in JZL and "agrees not to intervene with [Leung]'s operation and management during the term of this Management Agreement. The term of this Management Agreement is five (5) years, commencing February 6, 2013 to February 6, 2018." The contract specified Zhao would be the sole shareholder of JZL.

The contract states: "During the five-year term of this Management Agreement, the profits and/or losses of [JZL] shall not be relevant to [Zhao]

---

[1] In April 2012, Shengli International, Inc., one of the named defendants and respondents, entered into a Referral Agent Agreement with attorney Fang. The agreement states that Shengli International, Inc. "shall be entitled to payment of commissions . . . for (1) referring clients for legal services, (2) referring clients to purchase of EB-5 business opportunities offered or brokered by [Fang], and (3) referring clients to sell EB-5 business after clients have established official permanent residence." The agreement provides that Shengli International Inc. shall work with, and be managed by, Fang's master referral agent, Star Max LLC, and that any compensation shall be split between Shengli International Inc. and Star Max LLC. The agreement was signed by Fang, as president of his professional law corporation, Ge, as president of Shengli International, Inc., and Leung, as director of Star Max LLC.

[2] The Management Agreement was drafted in Mandarin Chinese and was translated by a certified court interpreter to English.

2

and [Leung] shall unconditionally repay the investment amount of [$1,000,000] in a one-time payment to [Zhao], upon the handover of [JZL] after the Management Agreement expires." "[I]n the event that [Leung] breaches the Management Agreement due to major fault of [his] own, [Zhao] may request the termination of this Management Agreement, and [Leung] shall pay all amount of investment back to [Zhao] within three (3) months upon receiving of such request."

JZL was incorporated on September 19, 2012, in California, and Leung was named as the corporation's initial agent for service of process. According to JZL's meeting minutes from December 2012, Zhao was appointed president and vice-president, Leung was appointed secretary, and Chen was appointed chief financial officer. At the meeting, it was resolved that JZL would issue shares, and Zhao was to purchase the shares of the corporation for one million dollars. The minutes also noted that "all checks, drafts, and other instruments obligating this corporation to pay money shall be signed on behalf of this corporation by" Zhao and Leung.

On February 27, 2013, Leung filed a fictitious business name statement for JZL to operate under the name "Star Max Realty." Additionally, in 2013, Leung drafted a five year business plan for JZL. The business plan indicated that Zhao was the president and founder of JZL, Leung was the secretary/real estate broker, Ge was the operations officer, Chen was the administrative assistant, Bogang Yang, Leung's son, was the human resources officer, and Wei Wang, Leung's wife, was the marketing officer.

On November 20, 2013, Ge sent an email to Zhao and Qui informing them that Leung had been mismanaging JZL. On January 8, 2014, Leung's attorney sent a letter to Zhao stating that Leung became aware of misconduct by Ge and Chen and informed Zhao that Leung would be terminating the

3

services of Ge and Chen immediately. The letter also requested that Zhao give instructions on how to proceed, and that if Zhao wished to have Leung continue acting as the manager of his business, Zhao should unfreeze the business bank accounts and remove Ge as an authorized user of the accounts. On January 27, 2014, Leung resigned as secretary of JZL and Star Max Realty terminated its management services to JZL.

On March 27, 2015, Zhao filed a complaint alleging 21 causes of action against all parties to this action, and additional individuals and companies including Fang. Appellants Leung, Wang, Yang, Star Max LLC, and Star Max Universal Inc. entered into a settlement agreement with Zhao and Qiu and judgment was entered according to that agreement. Respondents Chen, Ge, and Shengli International Inc. entered a separate settlement with Zhao.

On August 12, 2016, Leung, Wang, Yang, Star Max Universal Inc., dba Star Max Realty, and Star Max, LLC filed an amended complaint against Chen, Ge, Shengli International Inc., and Caritas Investment, LLC. The complaint asserted five causes of action: (1) implied indemnity; (2) equitable indemnity; (3) contribution; (4) intentional interference with a contract, on behalf of Leung only; and (5) fraudulent conveyance against defendants Chen, Ge, and Caritas Investment, LLC. On October 20, 2016, Chen, Ge, and Shengli International filed a cross-complaint alleging 13 causes of action.

Respondents moved for summary judgment or summary adjudication in October 2019. In January 2020, the trial court granted the motion for summary judgment against Yang as to the first, second, third, and fifth causes of action. As to the other plaintiffs, the court granted the motion for summary adjudication for the first and third causes of action, and denied it as to the second and fifth causes of action. For the fourth cause of action, the court granted the motion for summary adjudication as to defendants Chen

4

and Ge, and denied the motion as to Shengli International, Inc. and Caritas Investment, LLC.  In June 2024, before the trial was set to start, the parties submitted a joint stipulation and proposed order entering judgment against plaintiffs.  In executing the order and entering judgment, the court noted that after the hearing on the summary adjudication motion the parties agreed to plaintiffs' dismissal of the remaining causes of action without prejudice and dismissal of their cross-complaint, also without prejudice.

This appeal followed.

## DISCUSSION

Appellants do not challenge the trial court's ruling granting summary adjudication of the first and third causes of action.  Thus, the only issue before us is the trial court's granting of summary adjudication on the fourth cause of action brought by appellant Leung only for intentional interference with contract, as to Ge and Chen.[3]

### A. *Standard of Review*

"We review a summary judgment ruling de novo, 'considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports.' " (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 653.)  " 'In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [the] evidentiary submission while strictly scrutinizing the

---

[3] Appellants also seek reversal of the subsequent dismissal of their second and fifth causes of action, which they voluntarily dismissed via stipulation.  Appellants, however, do not present any argument as to the propriety of reversing the trial court's judgment on this point.  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 [review is limited to issues which have been adequately raised and briefed].)  Therefore, we do not provide an opinion on whether those dismissals can be set aside in light of our ruling.

5

moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor.' " (*Ibid.*)

A defendant is entitled to summary judgment if the defendant establishes a complete defense to a cause of action or shows that one or more elements of a cause of action cannot be established. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) If the defendant makes this showing, the burden shifts to the plaintiff to present facts that establish a triable issue as to one or more material facts. (*Baughman v. Walt Disney World Co.* (2013) 217 Cal.App.4th 1438, 1445.)

## B. *Intentional Interference with Contractual Relations*

" '[I]n California, the law is settled that 'a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." ' " (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 180, quoting *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.) "Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages.' [Citations.] It is generally not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141.)

In their motion for summary adjudication, Respondents argued that they could not be liable for interference with the contract because they were

employees of JZL.[4] The trial court agreed, finding that "defendants could not have interfered with any contract that Mr. Zhao or JZL entered into because they were, in fact, agents or employees of Zhao or JZL."

Here, the management agreement was entered into by Star Max Realty Company, through Leung as the company's president, and Zhao. The contract required that Star Max Realty Company operate and manage JZL for Zhao. Thus, it was Respondent's burden to show that they were not "a stranger" to the contract such that they were immune from liability for interference with the contract. (*Aguilar, supra*, 25 Cal.4th at p. 849.)

To answer this question, we turn to the underlying justification for limiting liability for tortious interference with contract to non-parties to the contract. As our Supreme Court explained, "[o]ne contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514 (*Applied Equipment*).) Therefore, a party to the contract cannot be held liable for tortious intentional interference with the contract because its only remedies are those available through the contract.

The *Applied Equipment* court went on to state that the "tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance" and that this "underlying policy" is to protect "the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship." (*Applied Equipment,*

---

[4] We draw on Respondents' moving briefs in the trial court because Respondents' appellate brief is barebones and does not provide any legal analysis on this issue.

7

*supra,* 7 Cal.4th at p. 514, fn. omitted and italics in original.) Taken at face value, this statement would suggest that third parties who are not parties to a contract but who do have some "social or economic interest" in the "scope or course" of the contract should, like the contracting parties, be immune from liability for tortious interference with contract claims.

However, as noted in *Caliber*, the "Supreme Court's comments about the liability of noncontracting parties were unnecessary to the holding of *Applied Equipment*, which was limited to whether a party can be liable for conspiracy to interfere with its own contract. The Supreme Court never addressed whether a tort claim for interference with contract could be made against a noncontracting party claiming to have a social or economic interest in the contractual relationship." (*Caliber*, *supra*, 54 Cal.App.5th at p. 181.)

As discussed in *Caliber*, most California Court of Appeal opinions addressing this issue have concluded that *Applied Equipment* does not exclude parties with a social or economic interest in the contract from liability for intentional interference with a contract. (*Caliber*, *supra*, 54 Cal.App.5th at pp. 183–185 [collecting cases].) The *Caliber* court concluded that "a defendant who is not a party to the contract or an agent of a party to the contract is not immune from liability for intentional interference with contract by virtue of having an economic or social interest in the contract." (*Id.* at p. 187.) We find *Caliber*'s reasoning persuasive.

It is undisputed that neither Chen nor Ge were parties to the management agreement. It is also undisputed that JZL was not a party to the contract. Therefore, even assuming Chen and Ge were acting for and on behalf of the corporation—which are disputed facts—they would still be strangers to the contract because JZL is not a party to the management agreement. (See *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th

8

1594, 1604 ["it is settled that 'corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract' "].)

Moreover, while Zhao is the sole shareholder of JZL, Chen and Ge's employment through JZL does not establish, nor have they presented any evidence, that they are Zhao's agents. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) " ' "The essential characteristics of an agency relationship as laid out in the Restatement are as follows: (1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." ' " (*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.* (2007) 148 Cal.App.4th 937, 964.)

In sum, Respondents have failed to meet their burden on summary judgment or adjudication to show that they are not strangers to the management agreement and immune from liability for intentional interference with contract. [5]

---

[5] At oral argument Respondents for the first time argued that there was no triable issue of fact showing they engaged in any intentional acts designed to induce breach of the contract between Appellant and Zhao. Respondents did not raise this argument in the court below; they relied solely on their erroneous claim that they were employees of JZL and therefore one of the parties to the contract, an argument we reject. On appeal, we will not consider "possible theories not fully developed or factually presented to the trial court." (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31, italics omitted.) For this reason, this theory newly advanced by Respondents, will not be considered.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to vacate its order granting Respondents' motion for summary adjudication and enter a new order denying such motion as to the intentional interference with contract claim brought by Leung against Respondents Chen and Ge. Appellant Leung to recover his costs on appeal.

_____

Moorman, J.*

WE CONCUR:


_____

Brown, P. J.


_____

Goldman, J.


A172275/*Leung et al. v. Chen et al.*

---

* Judge of the Superior Court of California, County of Mendocino, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.