Filed 12/18/25  Shannon B. Jones Law Group v. Vella-Andrade CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHANNON B. JONES LAW GROUP et al., Cross-complainants and Appellants, v. SANDRA J. VELLA-ANDRADE, Cross-defendant and Respondent. | A169685 (Contra Costa County Super. Ct. No. MSC17-01345) |

In her role as controller for a law firm, Sandra J. Vella-Andrade recorded employees' work hours as submitted in their timesheets to payroll summaries.  In so doing, she did not classify the hours an employee worked over eight hours in a day as overtime.  When an employee sued Shannon B. Jones Law Group, Inc. (SBJLGI) and attorney Shannon B. Jones (collectively the Jones Parties) for underpayment, the Jones Parties filed a cross-complaint against Vella-Andrade for intentional misrepresentation and concealment based on the incorrect summaries.  After the trial court granted Vella-Andrade's summary judgment motion and denied SBJLGI leave to file a fourth amended complaint, the Jones Parties appealed.  We affirm.

1

# I. BACKGROUND

This action arises from Vella-Andrade's employment with SBJLGI. Vella-Andrade was hired by SBJLGI in July 2010 as an assistant bookkeeper and was promoted to controller about one month later. As controller, Vella-Andrade was responsible for, among various duties, SBJLGI's payroll. She collected hourly employees' timesheets for every bi-monthly pay period and entered the reported total hours onto a payroll summary. Vella-Andrade submitted the payroll summary, and occasionally the underlying timesheets, to Jones. Once Vella-Andrade received Jones's approval, she would submit the payroll summary to Payroll Masters, SBJLGI's payroll service provider, to process and issue the paychecks and paystubs to the employees. Jones trained Vella-Andrade on how to process payroll and on at least one occasion during Vella-Andrade's approximately 5-year tenure as controller, Jones processed payroll herself. Vella-Andrade resigned on January 13, 2016.

Another SBJLGI employee, part-time file clerk Christy Olson, regularly submitted timesheets reflecting work in excess of eight hours a day. Olson classified all her hours worked as regular hours and never reported the time in excess of eight hours as overtime. In preparing the payroll summary, Vella-Andrade also reported Olson's hours as regular hours, recording the total hours Olson reported on her timesheet onto the payroll summary. Vella-Andrade did not identify any hours Olson worked over eight hours a day as overtime in the summary she submitted to Jones. Because Olson worked part-time, her hours as reported on the payroll summary never exceeded the number of full-time hours for the two-week pay period. Olson's employment with SBJLGI was terminated in May 2017.

In July 2017, Olson filed a complaint against the Jones Parties for wage and hour violations, including failure to pay overtime. In September

2017, the Jones Parties filed a cross-complaint against Olson and Payroll Masters. In May 2018, the Jones Parties filed a first amended cross-complaint adding Vella-Andrade as a cross-defendant. The first amended cross-complaint contained ten causes of action but only the ninth cause of action (breach of fiduciary duty/ the duty of loyalty) and tenth cause of action (conspiracy to misrepresent and conceal) were alleged against Vella-Andrade.

In June 2018, Vella-Andrade demurred to the ninth and tenth causes of action in the first amended cross-complaint. In July 2018, the Jones Parties filed a second amended cross-complaint, which changed the tenth cause of action by removing the mention of conspiracy and included an eleventh cause of action against Vella-Andrade for implied and equitable indemnity. In August 2018, the trial court vacated the hearing on the demurrer to the first amended cross-complaint. That same month, Vella-Andrade again demurred, this time to the ninth, tenth, and eleventh causes of action in the second amended cross-complaint. The trial court sustained the demurrer to the ninth cause of action with leave to amend, finding SBJLGI failed to allege facts establishing the existence of a fiduciary relationship; sustained the demurrer to the eleventh cause of action, without prejudice, because it was added without leave to amend; and overruled the demurrer to the tenth cause of action.

The Jones Parties did not seek leave to amend to add the eleventh cause of action at this point but subsequently filed a third amended cross-complaint in November 2018, realleging the ninth cause of action for breach of fiduciary duty and the tenth cause of action for misrepresentation and concealment against Vella-Andrade. After successfully demurring to this ninth cause of action, only the tenth cause of action for misrepresentation and concealment remained. As relevant here, the Jones Parties' cause of

3

action for misrepresentation and concealment alleged that Vella-Andrade and Olson "actively concealed and misrepresented important information from and to SBJLG[I] including: the actual time Olson worked for SBJLG[I]; claimed overtime by Olson; and that [Vella-Andrade] increased Olson's time on at least one time sheet to create overtime without SBJLG[I]'s permission or knowledge."

Over three years later, in January 2022, the trial court approved a stipulation submitted by the parties continuing the trial date in anticipation that a separate but related action by Vella-Andrade against the Jones Parties would be adjudicated prior to this action. [1] In November 2022, the parties stipulated to, and the court approved, a further continuance of the trial date until after the related Vella-Andrade action was decided and a waiver of the five-year statute of limitations to bring this case to trial.

On March 1, 2023, Vella-Andrade filed a motion for summary judgment and set a hearing for June 8, 2023. On March 31, 2023, the Jones Parties proposed that the parties stipulate to the filing of a fourth amended cross complaint with two new causes of action against Vella-Andrade for (1) implied and equitable indemnity and (2) aiding and abetting. On June 6, 2023, the Jones Parties filed a motion for leave to amend after not hearing back from Vella-Andrade. The hearing on Vella-Andrade's motion for

_____

[1] Vella-Andrade filed suit against SBJLGI for various employment related claims. (*Vella-Andrade v. Shannon B. Jones Law Group, Inc., et al.*, Contra Costa County Superior Court, Case No. MSC16-01673.) The trial court dismissed the Vella-Andrade case in January 2023 for failure to prosecute. Vella-Andrade appealed after dismissal of her case, which this court denied, and was followed by two petitions for writ of mandate, which were also denied. The trial court subsequently granted Vella-Andrade's motion to reconsider, which SBJLGI appealed. On this appeal, we grant the Jones Parties' unopposed motion for this court to take judicial notice of certain court orders from that action. (Evid. Code §§ 459, 452, subd. (d).)

summary judgment was continued and consolidated with the hearing on the Jones Parties' motion for leave to amend. The hearing occurred on November 2, 2023, and the trial court subsequently entered orders granting Vella-Andrade's motion for summary judgment on the misrepresentation and concealment cause of action and denying the Jones Parties' motion for leave to amend.

## II. DISCUSSION

### A. Summary Judgment

#### 1. Applicable Law

A defendant is entitled to summary judgment if the defendant establishes a complete defense to a cause of action or shows that one or more elements of a cause of action cannot be established. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) If the defendant makes this showing, the burden shifts to the plaintiff to present facts that establish a triable issue as to one or more material facts. (*Baughman v. Walt Disney World Co.* (2013) 217 Cal.App.4th 1438, 1445.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance *with the applicable standard of proof.*" (*Aguilar*, at p. 850, italics added.) " 'The plaintiff . . . may not rely upon the mere allegations or denials' of [their] 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (*o*)(2).)" (*Id.* at p. 849.) Thus, summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

"We review a summary judgment ruling de novo, 'considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports.' " (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 653.) " 'In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [the] evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor.' " (*Ibid*.)

In considering the motion, a court "may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact." (*Aguilar, supra*, 25 Cal.4th at p. 856.) Rather, the court determines "what any evidence or inference *could show or imply to a reasonable trier of fact.*" (*Ibid*.) "Thus, if the court determines that any evidence or inference presented or drawn by the plaintiff indeed shows or implies" fraud by misrepresentation or concealment to be *more likely than* not, it must deny the motion for summary judgment. (*Id*. at pp. 856–857.) In this situation, a reasonable trier of fact could find for the plaintiff. (*Ibid*.; *Miller v. Fortune Commercial Corp*. (2017) 15 Cal.App.5th 214, 221.) If, on the other hand, the court determines the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show and imply that fraud was only *as likely as,* or *even less likely than* an unintentional mistake, "it must then grant the defendants' motion for summary judgment, even apart from any evidence presented by the defendants or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff." (*Aguilar* at

6

pp. 857, 862 [plaintiff's evidence and inferences derived therefrom were at best ambiguous and "at least as consistent with" defendant's position and as such, plaintiff did not carry her shifted burden, i.e., her evidence would not allow a reasonable jury to find a conspiracy more likely than not].)

### 2. *The Trial Court's Ruling*

The trial court noted that while the Jones Parties' cause of action was styled as a single claim for misrepresentation and concealment, it set forth two separate causes of action:  one for fraudulent misrepresentation and another for fraudulent concealment.

Under the fraudulent misrepresentation claim, the court identified that the basis for the claim is that Vella-Andrade misrepresented the hours worked by Olson by incorrectly listing all hours worked as regular hours on the payroll summary, even when some hours should have been classified as overtime.  The court found that this occurred on at least one occasion, and likely more because many of Olson's timesheets showed she worked more than eight hours a day.  The court viewed the evidence as showing "while it may be true that the payroll summaries were not accurate, there is no evidence that Ms. Vella-Andrade was aware that they were not accurate—i.e. there is no evidence of 'knowledge of falsity.' "  The trial court similarly saw no triable material fact on the issue of intent to induce reliance.  It saw no evidence that Vella-Andrade made any knowing false statements regarding the hours worked by Olson.[2]

---

[2] The court looked skeptically upon the Jones Parties' theory why Vella-Andrade would intentionally submit false payroll summaries: "The [Jones Parties'] theory, apparently, is that Ms. Olson agreed to forgo overtime pay for years so that at some point in the future she could file a lawsuit against Jones Law for the failure to pay her overtime in the past. In doing so, Ms. Olson would need to incur legal costs in the hopes of eventually prevailing on her claims. This explanation is not reasonable."

7

The court also determined there was no evidence that Vella-Andrade concealed the fact of Olson's overtime from Jones with intent to defraud. The timesheets prepared by Vella-Andrade were always accessible by the Jones Parties. Lastly, the court held that the Jones Parties could not establish damages against Vella-Andrade because they failed to provide any legal authority to support the imposition of liability on an employee for the employer's failure to pay overtime.

### 3. Analysis

The tenth cause of action in the Jones Parties' Third Amended Cross Complaint alleged that Vella-Andrade "actively concealed and misrepresented important information from and to [the Jones Parties]," including claimed overtime by Olson, inter alia. They claim Vella-Andrade "intended to deceive" them and they "did not know the truth or accuracy of the misrepresented and concealed facts."

### a. Initial Burden

In her motion for summary judgment, Vella-Andrade met her initial burden to show that the Jones Parties' evidence did not establish all elements of the fraudulent misrepresentation and concealment claims against her. In a declaration, she acknowledged that part of her job at SBJLGI involved responsibility for recording the total regular and overtime hours reported by hourly employees, inter alia. Employees kept track of their time and submitted their timesheets to Jones or Vella-Andrade. Once completed, payroll forms were provided to Jones for final review and approval before being sent to Payroll Masters for processing. At all times, Jones had full access to the payroll records, summaries, and hourly employee timesheets. Vella-Andrade delivered the completed payroll summary forms with the underlying timesheets to Jones every pay period when she was in the office,

8

and when Jones was away from the office, left the timesheets for Jones to review upon Jones' return.  After Jones returned the payroll records, Vella-Andrade placed the timesheets in the firm's files which were always available to Jones.

Jones had trained Vella-Andrade how to fill out the payroll form and repeatedly told her that workers were prohibited from receiving overtime pay unless Jones personally approved it in advance.  No matter who completed the payroll—Jones, Vella-Andrade or Anita Andre (who succeeded Vella-Andrade as controller for the firm)—the same process was followed.  As it concerns Olson, all three recorded Olson's hours as regular time, irrespective of whether Olson's timesheet reflected that she worked more than eight hours any given workday.[3]  Exhibits submitted in support of the summary judgment motion illustrated this fact.  And as relevant here, when Jones herself handled payroll in January of 2016, she calculated all of Olson's submitted hours as regular pay, despite her timesheet reflecting two days where Olson worked over eight hours.

As stated, the above evidence was sufficient to shift the burden to the Jones Parties to create a triable issue of material fact because, if left uncontroverted, the Jones Parties would be unable to establish the claimed fraud.  (Code Civ. Proc., § 437c, subd. (p)(2) [burden of showing a cause of action has no merit is satisfied when a party shows that one or more elements of the cause of action cannot be established]; *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 891.)  Hence, to survive summary judgment, the burden shifts to the Jones Parties to show there is a triable issue of material

---

[3] Olsen acknowledged submitting all her hours as regular pay; she did not know she had been entitled to daily overtime pay.

facts on these elements. (*Baughman v. Walt Disney World Co.*, *supra*, 217 Cal.App.4th at p. 1445.)

"An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities [citation]. 'Thus, while the court in determining a motion for summary judgment does not "try" the case, the court is bound to consider the competency of the evidence presented.' " (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196–197.)

Upon review, we conclude the Jones Parties have not satisfied their burden to show a triable issue of material fact to support their fraudulent misrepresentation and concealment claims. Thus, there was no error in granting summary judgment.

### b. Fraudulent Misrepresentation

It is axiomatic that mistakes, inaccuracies, and incorrect statements are not always synonymous with fraud. Fraud in the form of intentional misrepresentation requires proof of the following elements: "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.)

The Third Amended Cross Complaint asserts that Vella-Andrade concealed and misrepresented "important information" including, inter alia, (1) the actual time Olson worked for SBJLG and (2) Olson's overtime. For the most part, the Jones Parties do not dispute that Vella-Andrade accurately

10

reported Olson's "actual time."[4] Vella-Andrade calculated the total hours on Olson's timesheets and transferred that amount to payroll summaries as regular time, regardless of how many hours Olson worked on a particular day. The Jones Parties' fraud claims against Vella-Andrade thus rest on her failure to separately categorize the time Olson worked in excess of 8 hours in a given day as overtime. Jones contends that part of Vella-Andrade's responsibilities as controller included "checking for overtime" and advising Jones if any employee worked overtime, "as overtime was prohibited unless expressly approved by [Jones] in advance."

The Jones Parties acknowledged they must prove that Vella-Andrade made a "knowingly false representation" as an element of intentional misrepresentation. On appeal, they focus their arguments on the trial court's factual conclusion that Vella-Andrade "was not aware that any hours worked over 8 in a single day should have been classified as overtime, even if the employee did not categorize it as such themselves."

This approach, however, oversimplifies the question of Vella-Andrade's alleged "knowingly false representation" and, we think, misconstrues the Jones Parties' burden to show a triable issue of material fact. On this record, a triable issue regarding Vella-Andrade's knowledge is not established solely by claiming Vella-Andrade knew, in the abstract, that working more than 8 hours in a day constitutes overtime. This is because the Jones Parties' own evidence establishes additional expectations of Vella-Andrade as the firm's

---

[4] The exception is the allegation that Vella-Andrade "altered [Olson's] time to falsely create an overtime situation without disclosing that act to Jones." This allegation is fundamentally the same as the remaining allegations in that it is based on Vella-Andrade's failure to separately categorize the time Olson worked in excess of 8 hours in a given day as overtime and that Vella-Andrade concealed the overtime from Jones. Thus, we do not separately analyze this allegation.

controller: the firm prohibited overtime that was not approved by Jones and the timesheets Olson submitted to Vella-Andrade never identified her hours as overtime. SGJLGI's policies impact the scope of evidence necessary to create a triable issue as to Vella-Andrade's alleged "knowledge of falsity." Because a triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of the fact to find the underlying fact in favor of [the Jones Parties] (*Agilar*, *supra*, 25 Cal.4th at p. 850), adequate evidence that Vella-Andrade knew or believed her summaries were false, on this record, must at least imply that Vella-Andrade's mistaken payroll practice did not result from the training she received from Jones and from SBJLGI's policy prohibiting unauthorized overtime.

In the same vein, evidence of Vella-Andrade's knowledge of falsity must show her purported failure to record Olson's overtime on payroll summaries was not a result of a perceived responsibility under SBJLGI's policies to transfer only the type of compensation time claimed by employees, like Olson, in their timesheets (e.g., regular time).

Additionally, the record conspicuously lacks evidence concerning how Vella-Andrade transferred timesheet information from other employees' timesheets (besides Olson) to the summaries. We cannot speculate that Vella-Andrade somehow treated Olson's timesheets differently than other employees. And, as discussed further *infra*, the fact that Jones trained Vella-Andrade and her successor Anita Andre to perform payroll, but Olson never received overtime pay even when Jones herself and Andre handled the

12

payroll, suggests a pattern or practice that undermines the allegation that Vella-Andrade knew or believed her submissions to be false.[5]

To raise an issue of genuine fact concerning knowledge of falsity in other contexts, courts have looked to a defendant's patterns of behavior to infer whether he or she had knowledge of a fraud. (See e.g., *Bains v. Moores* (2009) 172 Cal.App.4th 445, 458–459 [the timing and amounts of stock sales, were not sufficiently suspicious to raise a genuine issue of material fact as to defendants' knowledge of fraudulent accounting practices].) Without such evidence here, we conclude that no reasonable trier of fact could find Vella-Andrade—more likely than not—knew her summaries were "false," as opposed to believing they were accurate, albeit mistaken, summaries that obeyed the law firm's policy. (*Agilar*, *supra*, 25 Cal.4th at p. 850)

Nevertheless, to counter the trial court's conclusion that Vella-Andrade "was not aware that any hours worked over eight in a single day should have been classified as overtime, even if the employee did not categorize it as such themselves," the Jones Parties point to Vella-Andrade's resume to argue she had the knowledge and experience from previous employment to understand what constitutes overtime. According to her resume, she had been the vice president of accounting for Alpine Awards, Inc., participating in and supervising all administrative functions, including payroll. She had also

---

[5] As highlighted by the trial court, "[w]hile copies of all of Ms. Olson's timesheets were provided, only a couple of the payroll summaries were provided. As such, the Court only has evidence of one occasion where it is shown that the timesheet shows more than eight hours worked in a day and a corresponding payroll summary showing that all such hours were recorded as 'regular ' pay while Ms. Vella-Andrade worked for Jones Law. [Citation.] It is unclear from the record how often this occurred."

13

been the owner/partner of United Trust Services, LLC for which she handled all administrative functions, including payroll.[6]

We disagree, however, that these past work experiences created a triable issue as to whether Vella-Andrade believed the hours she submitted to Jones for review were false. Vella-Andrade's resume demonstrated she had experience doing payroll, but did not expressly reveal whether or how that experience included knowledge of overtime laws. There is no indication whether the jobs she worked involved hourly or salaried employees, or whether she had received any specialized training regarding overtime laws.

The Jones Parties principally rely on three email exchanges between Jones and Vella-Andrade to show Vella-Andrade had previously brought employee issues to Jones' attention including overtime. But these emails fail to create a triable issue as to whether Vella-Andrade understood her payroll summaries to be false. In the first email exchange, dated September 2010, Vella-Andrade emailed Jones seeking confirmation about overtime: "what is your structure for OT Hours is it over 80 in a payroll or over 8 hours in a day? [An employee] submitted 62.0 Regular hours and 5.75 hours OT . . . is this ok? [¶] Does overtime apply to me?" Jones responded: "Everything is fine as outlined. Re overtime, no one is authorized to work more than 8 hrs a day unless pre[a]pproved. If you are working more th[a]n that, we need to find you more help. We cannot afford ot."

Contrary to the Jones Parties' contention, this email does not show that Vella-Andrade previously identified overtime worked by another employee. Vella-Andrade wrote that this employee "*submitted* 62.0 Regular hours and

---

[6] A later email from 2012 stated that Vella-Andrade's work for the Jones Parties included "Payroll – Tracking employee information / deductions / address and name changes / Salary and hourly changes and or increases and decreases.

14

5.75 hours OT (italics added)," from which we can infer that this was self-reported overtime, not time that was reported as regular hours as was the case with Olson. Moreover, this email exchange shows that in 2010 Vella-Andrade did not understand how to treat overtime. While Jones responded that no one is authorized to work more than eight hours a day unless preapproved, her email does not explain that any time over eight hours must be classified as overtime or that it is Vella-Andrade's responsibility to do so.

In the second email exchange, dated September 2012, Jones initiated the communication stating: "[A named employee] submitted time for the last pay period which was above 8 hours per day. She should have been paid overtime at time and a half. Was she paid for this[]? If not, pls get it processed ASAP." Vella-Andrade responded: "OK--- [¶] Sorry, I did not compensate for the OT Hours. [¶] I thought we were not going to pay the OT rate since she was advised that she was not supposed to work OT and it was not pre-approved in advance[]. [¶] She was already paid 100.15 Reg hours for 11 days of work."

Again, these emails do not support the Jones Parties' position. The communications do not show that Vella-Andrade identified and reported overtime *to Jones*. They show the opposite. An employee claimed overtime in the first email. In the second email, Jones pointed out *to Vella-Andrade* that the employee had worked more than 8 hours per day and needed to be paid the overtime hours. Vella-Andrade's reply clearly illustrates a misunderstanding of the law and her responsibilities as controller. It revealed Vella-Andrade's belief that if Jones did not pre-approve overtime payment, none would be paid regardless of the hours the employee worked. This latter inference is reasonably drawn from Vella-Andrade explaining in the same email that the employee had already been paid over 100 regular

15

hours for 11 days of work, mathematics that loudly announced overtime hours had been worked. Despite the obvious error, the misunderstanding was not corrected by Jones in her reply email.

Similarly, a third email exchange in October 2015 does not raise a triable issue. In this communication, Vella-Andrade emailed Jones to alert her that an employee had only "logged 29.60 hours of work for this last payroll with a total of 40 hours possible." Jones responded, "She has not been here for the full payroll period. She only started on 9/24. Didn't you pro-rate her? [¶] Therefore, 40 hours is not available. [¶] She is scheduled to work 40 hours per week." In the next email from Vella-Andrade, she stated, inter alia: "If you agreed to allow [the employee] to work less than a 40 hour week (29 h[ou]rs this payroll for a 5 day week) rather than the regular 40 hours required for FT Status that is between you and [the employee]. I just wanted to make sure you were informed in case you didn't notice her 29.60 hours worked on the payroll sheet I emailed you today." Jones responded, "Thanks – I will deal with this," followed by "By the way, [the employee] does not have to fill out a time sheet given that she is on payroll."

The Jones Parties offer these emails to support their view that Vella-Andrade "was aware that any hours worked over 8 hours in a single day should have been classified as overtime, contrary [to her] assertions and to the conclusions of the trial court." However, as stated above, they do not suggest that Vella-Andrade believed her payroll summaries were false. Instead, the emails illustrate that, after years of working for the Jones Parties, Vella-Andrade deferred to Jones to approve employee work schedules and overtime. It is true, as the Jones Parties contend, that the fact of Vella-Andrade alerting Jones about the hours of a payroll employee who did not need to fill out a timesheet tends to show that Vella-Andrade reviewed and

16

evaluated employee timesheets. But nothing about knowledge of falsity follows from this; overall, the emails do not raise a triable issue concerning that element.

Of further significance is evidence of three separate pay periods spanning 18 months where Jones, Vella-Andrade, and Andre (Vella-Andrade's successor as controller) each handled the payroll. For each sampled pay period, Olson submitted timesheets reflecting work in excess of eight hours in one day for which she was not paid. Hence, each person handling Olson's payroll committed the same "error" the Jones Parties attribute to Vella-Andrade in this case. Coupled with the fact, conceded by Jones, that Jones personally trained both Vella-Andrade and Andre on payroll, it is reasonable to infer that training significantly contributed to the manner in which payroll summaries were prepared and that errors went unchecked for long periods of time.

Lastly, the Jones Parties argue that Vella-Andrade, as controller, had a *duty* to disclose any overtime or discrepancies in Olson's time. " '[W]hile duty is not an element of fraud in the traditional sense, a duty is owed to others to refrain from intentionally tortious conduct.' " (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 71.) They aver that this duty was breached by Vella-Andrade approving timecards submitted by Olson without disclosing overtime to the Jones Parties, and by "fabricating" one of Olson's timecards to add 30 minutes (purportedly to take a package to the nearby FedEx office), creating "an overtime situation." The existence or nonexistence of a duty may bear upon Jones's reliance on Vella-Andrade's work and whether such reliance was justified—a question of fact (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498–1499), but it does not impact the knowledge of falsity analysis.

17

On this record, the Jones Parties' burden has not been satisfied. (See e.g., *Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1473–1476 [even assuming the underlying assumptions of an offering memorandum were incorrect, the lack of evidence that respondent made the misrepresentations knowing or believing they were not true showed negligent misrepresentation but not actual fraud]; *Wishnick v. Frye* (1952) 111 Cal.App.2d 926, 931 ["the mere finding that a representation of fact is false without a finding of the presence of the requisite element of scienter cannot sustain the conclusion of fraud in an action for damages based on deceit"].) Viewing the evidence in the light most favorable to them, they have not provided sufficient evidence to create a triable issue of material fact as to whether Vella-Andrade knew the representations she made on the timesheet summaries regarding Olson's hours were false.

### c. *Fraudulent Concealment*

As stated, Vella-Andrade calculated the total hours worked from employee timesheets onto payroll summaries for Jones to review. Olson's submitted timesheets did not classify certain hours as overtime despite her eligibility to receive overtime compensation for working over eight hours in a day. Vella-Andrade transferred Olson's hours as regular time. The Jones Parties contend Vella-Andrade's failure to identify and record Olson's unclaimed overtime amounts to fraudulent concealment. In granting summary judgment, they contend the trial court erroneously overlooked their evidence that Vella-Andrade "hid and failed to disclose" Olson's overtime and rarely provided Jones with employee timesheets (contrary to Vella-Andrade's claims).

" ' "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or

18

nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173; *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 32.)  A cause of action for non-disclosure of material facts may arise in at least three instances, including the following: "(1) the defendant makes misrepresentations but does not disclose facts which materially qualify facts disclosed, or which render [the] disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discovered by the plaintiff; [and] (3) the defendant actively conceals discovery from the plaintiff." (*Warner Construction Corp. v. City of Los Angeles* (1972) 2 Cal.3d 285, 294, fns. omitted; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 666.)  " 'Active concealment or suppression of facts by a nonfiduciary "is the equivalent of a false representation, i.e., actual fraud." ' " (*Hoffman v. 162 N. Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1186.)

The above knowledge of falsity discussion applies to this theory as well. But here, we separately discuss the "concealment" claim.  Vella-Andrade is not accused of actively preventing Jones from accessing payroll records.  She is not accused of destroying or secreting any timesheets.  The claim against her is that by virtue of Vella-Andrade's failure to isolate Olson's unclaimed overtime on payroll summaries, Jones was presented with, and relied on, incomplete information.  Without timesheets being submitted (as Jones claims and which we accept as true to evaluate her claims) to double-check Vella-Andrade's work, the Jones Parties consider this concealment.  We do not.

To raise a triable issue of fact, the Jones Parties aver that because Vella-Andrade did not include Olson's underlying timesheet with the

completed payroll summary to Jones' approval, "Jones had no means of knowing about the overtime." They rely on Jones' declaration and an attached email which they argue shows Vella-Andrade emailed Jones a payroll summary without including the underlying timesheets. But this evidence could not, by itself, raise a triable issue of fact. Vella-Andrade successfully objected to the inclusion of the attached email and the trial court excluded it. We do not consider evidence properly excluded by the trial court. (*Mackey v. Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 653.) And, as explained below, Jones' declaration—the only remaining evidence—does not raise a triable issue of material fact.

Despite claiming that Vella-Andrade only provided Jones the underlying timesheets on "rare occasions" or "every once in a while," there is no question on this record that the Jones Parties enjoyed the right to access all employee timesheets if they chose to do so. (See, e.g., Lab. Code § 2861 ["employee shall, on demand, render to [their] employer just accounts of all [their] transactions in the course of his service . . ."].) By these statements, we infer the Jones Parties apparently did not demand Vella-Andrade to provide the underlying timesheets to Jones, along with the payroll summary, when submitting payroll. Yet, the evidence also suggests that, at any time, Jones was able to direct Vella-Andrade to provide employee timesheets, which Vella-Andrade retained but Jones did not know how to locate. Jones could have also directly asked employees to submit timesheets to her. Moreover, even without having to ask, Jones acknowledges that Vella-Andrade submitted timesheets at least "[e]very once in a while." Thus, without having to resort to what the Jones Parties describe as Vella-Andrade's self-serving statements, these concessions by the Jones Parties undermine their ability to identify a triable issue concerning Vella-Andrade's

20

alleged "concealment" or how the allegedly concealed facts (Olson's overtime) were "known or accessible only to defendant and defendant knows they are not known to or reasonably discoverable by the plaintiff." (*Warner Construction Corp. v. City of Los Angeles*, *supra*, 2 Cal.3d at p. 294.) Thus, we do not credit the Jones Parties' conclusions that Jones, who trained Vella-Andrade on payroll and demanded final review, had no way of knowing about Olson's overtime. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473 ["Where a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded"].) That conclusion is unsupported by the record. Accordingly, the Jones Parties have failed to raise a triable issue of material fact sufficient to survive summary judgment on this action. There is no evidence the timesheets (or contents of the timesheets) were only known or accessible to Vella-Andrade or that Vella-Andrade improperly withheld known false information from the Jones Parties. (*Warner Construction Corp. v. City of Los Angeles, supra,* 2 Cal.3d at p. 294; *Sinai Memorial Chapel v. Dudler*, *supra*, 231 Cal.App.3d at pp. 196–197 ["An issue of fact can only be created by a conflict of evidence"].) No reasonable trier of fact could find those allegations to be true.

## B. Leave to Amend

### 1. *Applicable Law*

"Generally, leave to amend should be liberally granted. However, unwarranted delay justifies denial of leave to amend. [Citations.] And the liberal policy favoring leave to amend 'applies " 'only "[w]here no prejudice is shown to the adverse party." ' " ' [Citation.] Prejudice exists where the proposed amendment would require delaying the trial, resulting in added costs of preparation and increased discovery burdens. [Citation.] [¶] We

21

review a denial of leave to amend for abuse of discretion." (*Miles v. City of Los Angeles* (2020) 56 Cal.App.5th 728, 739.)

### 2. The Trial Court's Ruling

As recited above, the Jones parties moved for leave to amend their pleading in June 2023. This occurred five years after the trial court had sustained Vella-Andrade's demurrer to the Jones Parties' cause of action for indemnity in the second amended cross complaint without prejudice to the Jones Parties seeking a proper motion for leave to amend and reserving the court's rulings on the merits of that cause of action *in December 2018*. The Jones Parties asserted they sought leave to amend pursuant to the December 2018 order and the court decided that "waiting almost five years since that order to actually move for leave to amend is an unreasonable delay." The court also observed that the timing of the request for leave to amend raised questions as to the basis for delay, noting it "suggests that the reason for the filing was to prevent the hearing on the [motion for summary judgment] from going forward." The trial court denied the motion, finding "not only did [the Jones Parties] know of the facts underlying the proposed additional causes of action since the filing of the original cross complaint, [they have] failed to articulate any valid reason for waiting almost five years to seek leave to amend," relying on *Melican v. Regents of the University of California* (2007) 151 Cal.App.4th 168 (*Melican*) and other cases cited therein.

### 3. Analysis

In *Melican*, the appellate court observed that at the hearing on defendant's summary judgment motion, the plaintiffs "dropped" one of their claims and "orally moved to amend their complaints to add a new breach of contract claim." (*Melican, supra,* 151 Cal.App.4th at p. 175.) The court found no abuse of discretion in the denial of plaintiffs' "11th-hour request for leave

22

to amend" where the plaintiffs were "aware of the facts underlying" the new claim yet waited over five years to make the request, "proffer[ed] no explanation for th[e] clearly unreasonable delay," and the new claim did not appear viable. (*Id*. at pp. 176–177.) The court concluded it "would be patently unfair to allow plaintiffs to defeat [defendant's] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings." (*Id*. at p. 176.)

The Jones Parties argue that the trial court erred in relying on *Melican* for four reasons. None is persuasive.

First, the Jones Parties argue that unlike *Melican* where there was no explanation offered for the delay, the parties here intentionally "allow[ed] the case to go dormant" based on the two stipulations to continue the trial date and waive the five-year statute of limitations, and they fault the trial court for not considering the pandemic in concluding the delay was unreasonable. We disagree with this description of the action.

The Jones Parties filed their original cross-complaint in June 2018 and Vella-Andrade's demurrer to the indemnity cause of action from the second amended cross-complaint was sustained with leave to amend in December 2018. It was not until January 2022—over three years after the demurrer to the indemnity cause of action was sustained—that the first stipulation to continue the trial date was filed. Further, the Jones Parties do not explain how the pandemic affected their ability to amend their claims when the pandemic lockdown orders began in March of 2020, more than a year after the demurrer to their indemnity cause of action was sustained. The Jones Parties had opportunities to move to amend prior to the pandemic, the filing of the stipulations, and prior to the hearing on Vella-Andrade's motion for summary judgment.

23

Second, the Jones Parties argue that the trial court's conclusion it would be patently unfair to allow them to present a moving target was inconsistent with the law, relying on *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059. *Kirby*, however, does not support the Jones Parties' position. In *Kirby*, the court found the motion for summary judgment, which was unsupported by declarations or other evidence, effectively operated as a motion for judgment on the pleadings and therefore invoked a different standard for allowing amendment in such cases akin to leave to amend following a demurrer. (*Kirby* at pp. 1059, 1067–1069.) The court concluded: "Where the complaint is challenged and the facts indicate that a plaintiff has a good cause of action which is imperfectly pleaded, the trial court should give the plaintiff an opportunity to amend." (*Id.* at p. 1067.) That standard is inapplicable here because the Jones Parties' causes of actions were not improperly pleaded—rather they were not pleaded at all—and Vella-Andrade's summary judgment motion involved extrinsic evidence and therefore did not operate as a motion for judgment on the pleadings.

Third, the Jones Parties assert that this case is factually dissimilar to *Melican* because the plaintiffs there dismissed one of their claims and orally tried to amend the complaint, whereas the Jones Parties filed "a proper motion for leave to amend" the complaint before the hearing on the motion for summary judgment. Here, as in *Melican*, the timing of the Jones Parties' motion, written or not, was still an eleventh-hour attempt to avoid a ruling on Vella-Andrade's motion for summary judgment. They submitted the motion for leave to amend two days before the initial hearing on the motion for summary judgment, and as the trial court noted, the timing suggested a purpose of preventing the motion from being heard. (See *Leader v. Health*

*Industries of America, Inc.* (2021) 89 Cal.App.4th 603, 613 ["the trial court has wide discretion in determining whether to allow the amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: *'including the conduct of the moving party and the belated presentation of the amendment.'"*].) Therefore, we do not find this case to be factually dissimilar to *Melican* based on the timing and form of the motion.

Finally, the Jones Parties distinguish their facts by pointing out the proposed amendment to the pleading in *Melican* did not appear viable, whereas no similar finding was made here. The questionable viability of a claim can also support the denial of a motion for leave to amend, but it is not the only grounds to do so. (See *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.) Indeed, " ' "unreasonable delay in presenting [a claim] may—of itself—be a valid reason for denial." ' " (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.)

"[U]nwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend [citation], and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence" ' [citation]. Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' " (*Falcon v. Long Beach Genetics, Inc., supra*, 224 Cal.App.4th at p. 1280.)

The Jones Parties contend the trial court erred by failing to make a required finding of prejudice in denying their motion for leave to amend, requiring us to reverse. It is well established, however, that "long unexcused delay is sufficient to uphold a trial judge's decision to deny the opportunity to amend pleadings, particularly where the new amendment would interject a new issue which requires further discovery." (*Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692.) As mentioned above, "[p]rejudice exists where the proposed amendment would require delaying the trial, resulting in added costs of preparation and increased discovery burdens." (*Miles v. City of Los Angeles, supra,* 56 Cal.App.5th at p. 739.)

Here, as the trial court found, the Jones Parties' almost five-year delay in seeking to amend the cross-complaint was unreasonable and unexcused. The Jones Parties were clearly aware of at least one of their proposed amendments since July 2018 when they added the 11th cause of action for indemnity. The Jones Parties did not diligently act to amend the complaint even after the trial court granted the demurrer to the indemnity cause of action without prejudice because they never properly filed for leave to amend. Instead of immediately filing for leave to amend to add the indemnity cause of action, the Jones Parties left the pleadings untouched, allowing discovery to proceed for almost five years. Additionally, the aiding and abetting cause of action would interject new issues which would also require further discovery and further delay any potential trial date. On this history, we cannot conclude the trial court abused its discretion in denying the Jones Parties' motion for leave to amend.

The Jones Parties further argue that Vella-Andrade should be estopped from claiming the delays in this case were unexplained or unreasonable

26

based on their past stipulations to continue the trial date upon which the Jones Parties relied to believe this case would be continued until the other Vella-Andrade litigation concluded. We are not persuaded. As explained, the stipulations were not filed until January and November of 2022, over three years after the demurrer to the indemnity cause of action was sustained.

Moreover, the Jones Parties could not have reasonably relied on the representations in those stipulations for failing to amend their pleadings from three years earlier. The January 2022 stipulation continued the trial date and waived the five-year statute of limitations to bring the case to trial. Neither stipulation, however, ceased all activity in the case or prevented the parties from filing additional motions.

In this situation, Vella-Andrade is not estopped from arguing the delay in filing the leave to amend was unreasonable. The stipulations were entered years after one of the causes of action was already known to the Jones Parties and those stipulations did not cease activity in the case.

### III. DISPOSITION

The order granting Vella-Andrade's motion for summary judgment and the order denying SBJLGI's motion for leave to amend are affirmed. Vella-Andrade is awarded costs.

_____

Smiley, J.


WE CONCUR:



_____

Banke, Acting P. J.




_____

Langhorne Wilson, J.


*Shannon B. Jones Law Group et al. v. Vella-Andrede*  A169685